AMALGAMATED ASSOC. OF STREET AND ELECTRIC RAILWAY
AND MOTOR COACH EMPLOYEES *v.* MORLEY,
COMMISSIONER OF REVENUES.

4-9521                                                    239 S. W. 2d 745

Opinion delivered May 21, 1951.

*Kenneth C. Coffelt,* for appellant.

*O. T. Ward,* for appellee.

PAUL WARD, J. On December 3, 1946, appellants, as plaintiffs, filed their petition for a permanent injunction against the Commissioner of Revenues for the State of Arkansas, asking the court to permanently enjoin said Commissioner from collecting the five dollars required by the statute as a fee for all chauffeurs. An abstract of the material portions of the petition is set out as follows:

Come the plaintiffs in their own right and as officers of the above named labor organization and on behalf of the individual members thereof, and petition the court to restrain the defendant, in his official capacity or otherwise, from attempting to impose and collect chauffeur's license as provided by Act 291 of the 1937 Acts of the General Assembly of the State of Arkansas, and state; First, that the said Act reads as follows:

"Section 1. In addition to any other chauffeurs or drivers license required to be paid by law, every person desiring to operate a motor vehicle as a chauffeur, which

is hereby defined to mean any person operating a motor vehicle as a mechanic or employee or for hire, shall file in the office of the Commissioner of Revenues, on a blank to be supplied by said Commissioner, an application to be properly sworn to, which shall include his name and address and the motor power of the vehicle or vehicles he is competent to operate, and shall pay a registration fee of Five Dollars ($5.00) per annum.'' (We do not quote the entire Act as set out in the petition, as the above seems to be all that is material.)

Second, that the plaintiffs and the persons on behalf of whom this action is brought are employed by the Capital Transportation Company in the cities of Little Rock and North Little Rock, Pulaski County, Arkansas, as operators of street cars and public utility transportation buses under an operating franchise by the said Capital Transportation Company with the cities of Little Rock and North Little Rock.

Third, that plaintiffs do not come within the provisions or purview of said Act 291 of 1937, as they are not ''operators of vehicles for hire.''

Fourth, that plaintiffs individually are operators but not chauffeurs and said law is not applicable to them also for said reason. That plaintiffs operate the vehicles furnished by their employer under the franchise with said cities for a stipulated fare per passenger over a designated route and they are under the exclusive control of their employer, taking instructions from the officials thereof and are not under the control, supervision, or direction of said passengers as in cases of chauffeurs operating a vehicle for hire as was intended by the legislative body at the time said act was passed.

Fifth, that the plaintiffs have not been compelled to pay said tax since the passage of said act of 1937.

That the defendant, as Commissioner of Revenues in the State of Arkansas, is wrongfully attempting to collect chauffeur's license from these plaintiffs and unless restrained and enjoined by an order of this court

from so doing, plaintiffs and members of said local organization, will suffer irreparable damage and injury and will be forced to pay a tax or license fee which they do not owe.

Wherefore, plaintiffs pray that the defendant be permanently restrained from imposing and collecting said tax, designated as a chauffeur's license fee under the provisions of the Act of 1937.

On December 13, 1946, the defendant filed an answer in which it is stated: First, he admits that he is now attempting to enforce the provisions of Act 291 of 1937 as it applies to the members of this union, and states specifically that the members of this union who operate buses for the Capital Transportation Company, are chauffeurs within the meaning and definition of this Act; Second, that he denies each and every other material allegation of the petition.

So far as the record discloses no further steps were taken in this case until October 4, 1950, when the attorneys for both sides entered into the following stipulation:

"It is stipulated and agreed by and between the parties hereto and their attorneys, that the following statement shall be considered as the undisputed evidence in this case.

"That the Amalgamated Association of Street and Electric Railway and Motor Coach Employees of America, Local No. 704, W. W. Thompson, President, C. T. Grable, Secretary, is a Union of bus operators for public and private utilities and municipalities in the United States; that said Union has various Locals in the various Cities throughout the country; that Local No. 704 set forth in the complaint is the Local Union in Little Rock and has 304 members; that the members of this Union in Little Rock are the drivers and bus operators for the various buses owned and operated by the Capital Transportation Company in the City of Little Rock, Arkansas; that the Capital Transportation Company is a corporation, organized and existing under the laws of the

State of Delaware and is duly authorized to engage in business in Arkansas, with its principal offices in Little Rock; that it has a franchise with the City of Little Rock for the operation of the buses owned by it, within the city limits of Little Rock; that said buses are operated by said corporation for the purpose of transporting passengers for hire within the city; that the members of Local No. 704 operate the said buses for said corporation as its bus drivers; the said company operates approximately 100 buses within said territory; each of the drivers of said buses receives a regular wage for his work as bus operator from said corporation, based on an hourly pay basis; the Union, for the drivers, and the corporation have a working agreement which is negotiated and renewed annually under the labor laws of the State of Arkansas and the United States; the drivers and the members of the Union are not permitted in any manner to receive any private compensation or tips from any individual, other than the corporation for their work and activities in operating the bus; no passenger is permitted or allowed to pay any sum of money to the operators for the service of the operators; the passengers on the buses pay to the corporation a fixed fee for riding the buses from one destination to another, within said city; the public generally are accepted as passengers on each bus; no citizen within the territory has any more privilege than any other; each of the bus operators have fixed routes to travel with the bus they operate; when a passenger boards a bus, it is the duty of the operator of the bus to accept the fee charged the passenger for his ride upon the bus; the bus operator sees to it that the fee for the corporation for the passenger's ride upon the bus is collected and deposited in the fare box on the bus, and a service man, who is a member of the Union, takes the money out of the box and turns it over to the office of the corporation when the run of the bus operator for the day is completed.''

No testimony was taken by either side and the case was submitted on the pleadings and the above stipulation to the Chancellor who, on December 15, 1950, ruled against the contention of the plaintiffs, stating that the

complaint should be dismissed for want of equity and that the Commissioner of Revenues of this State is entitled to collect the duly authorized chauffeur's fee or license of five dollars each for the drivers of said buses beginning January 1, 1951. From said holding appellants now prosecute this appeal.

Appellants contend that they do not come within the purview of Act 291 quoted above, stating that no case has been found where we have defined the word "chauffeur". The definition by Webster is, "Any person who operates a motor vehicle and who directly or indirectly receives compensation for services in connection with such operation." However, before resorting to the dictionary all the statutes bearing on the question should be fully examined, as was stated in the case of *Morley, Commissioner of Revenues* v. *Capital Transportation Company*, 217 Ark. 583, 232 S. W. 2d 641, decided by this court June 12, 1950. There, in discussing the meaning of the words "motor buses" the court said: "The answer cannot be arrived at merely by looking into the dictionary, but must be discovered from examination of the statute as a whole." We find that Act 280 of the Acts of 1937 § 3(c) defined the word chauffeur: "Chauffeur. Every person who is employed for the principal purpose of operating a motor vehicle and every person who drives a motor vehicle while in use as a public or common carrier of persons or property." In addition to the above we have a further statutory definition of the word "chauffeur" in Act 235 of the Acts of 1949, § 1 (h) (Ark. Stats. 1947, § 75-201, sub. par. h) in the following words: "Every person desiring to operate a motor vehicle as chauffeur, which is hereby defined to mean any person operating a motor vehicle, either for himself or for another, as his or her occupation, to transport other persons or cargo, . . .".

As we consider the language of § 1, Act 291 of 1937 it leaves little room for doubt that the word "chauffeur" is defined clearly enough to include appellants in their employment as set out in the stipulation copied above.

It defines "chauffeur", ". . . to mean any person operating a motor vehicle . . . as an employee or for hire . . .". Any doubt that might remain, however, is fully dispelled by the definitions as set out in the later enactments referred to heretofore in this opinion.

From the stipulation set out above we find: "That the members of Local No. 704 operate the said buses for said corporation as its bus drivers; . . . (and) each of the drivers of said buses receive a regular wage for their work as bus operators from said corporation . . .".

We note that appellants' petition filed in the lower court contains the allegation that the Capital Transportation Company operates buses and "street cars". From this allegation in the petition it might be inferred that some of the buses driven by appellants are operated or propelled by electricity, but we fail to find that this allegation is substantiated by the stipulation. Moreover, it was held in the case of *Morley, Commissioner of Revenues* v. *Capital Transportation Company, supra,* that buses propelled by electricity are "motor buses" as defined by our statutes.

It is noted that this suit was not brought by the individuals upon whom the license fee is imposed, but by the Union to which they belong. The propriety of this procedure is not questioned by appellee and therefore we express no opinion thereon.

From what has been said above it follows that the lower court was correct in denying appellants' petition for a permanent injunction and its decree is therefore affirmed.